# Hurst *v.* Reading Abattoir Company, Inc., Appellant.

*Negligence—Master and servant—Falling through trap door—Elevator—Failure of signal apparatus.*

In an action by a wife to recover damages for the death of her husband from his employer, an abattoir company, a verdict and judgment for plaintiff will be sustained where the evidence shows that the deceased while in the discharge of his duties fell through a trap door covering an elevator shaft, that there was no danger in passing over the door except when the elevator was moving; that electric bells gave notice of the elevator's movements, but that for a considerable period they had not been working reliably, and that the defendant had been repeatedly advised of these facts but had not corrected the trouble.

Argued Feb. 26, 1912. Appeal, No. 150, Jan. T., 1911, by defendant from judgment of C. P. Berks Co., June T., 1908, No. 59, on verdict for plaintiff in case of Kate Hurst v. Reading Abattoir Company, Inc. Before FELL, C. J., BROWN, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's husband.

At the trial the jury returned a verdict for $4,075. On a motion for a new trial and for judgment n. o. v. END-LICH, P. J., filed an opinion which was in part as fol-lows:

It is an uncontested fact in this case that the injury which resulted in the death of plaintiff's husband was re-ceived by him in the discharge of his duty as defendant's employee. It is equally undisputed that it was received by him in passing from one part of the building to an-other over a trap-door covering an elevator shaft, open-ing upwards to let the elevator through, constituting when closed a part of the floor, intended to be used as such, and affording the only means of passage from the

side on which he was to that to which he was going.
There was no danger in passing over this trap-door ex-
cept when the elevator was moving. For the purpose
of giving notice of its movements there were electric
bells fixed at certain points. There appears, however,
to be no room under the evidence for a reasonable doubt
that these bells, during a considerable period, had been
working unreliably. Frequently they did not ring. The
defendant was repeatedly advised of this fact. There
was no serious attempt on its part to put them into more
efficient condition. The batteries would be shaken up
by the engineer or some other employee, and then the
bells would work for awhile. Several times on the morn-
ing of the accident they did not; once quite early they
did. There is no pretense that at the precise time of
the occurrence they sounded. The defendant's superin-
tendent was with the deceased, but a few feet behind
him. He does not say that the bells rang. It is not
clear that there were any other means by which one ap-
proaching the trap-door could ascertain whether the
elevator was moving or not. The plaintiff's husband
had been employed at this place for quite some time
and frequently gone over the trap-door. There is noth-
ing to indicate that he knew the bells to have failed that
morning. Nor, since they had not failed each time, is
there anything to show that he had not reason to think
they were working. He went towards the trap-door
rapidly and stepped upon it without first stopping.

Upon this statement of facts two questions arise in-
volving the right of recovery, (1) whether the deceased
had assumed the risk of the injury that befell him and
(2) whether any negligence on his part contributed to it.

Whatever risk there was in the mere presence of the
trap-door, the plaintiff's husband undoubtedly assumed.
But there was no danger in that to him so long as the
signal apparatus was in working order, unless he chose
to ignore its warnings. That, however, the defendant
owed him the duty of keeping that apparatus effective

can hardly be doubted. See Ortlip v. Traction Co., 198 Pa. 586. Its efficiency was not, therefore, one of the risks he can be deemed to have assumed by accepting his employment or continuing in it. Nor was the knowledge brought home to him by the evidence such as to imply that assumption. Granted he knew all that the facts shown in relation to the elevator could fairly have apprised him of. Then he knew that there were bells intended to give notice of the movements of the elevator, and that when in order they did so; and whilst he knew that they often got out of order, he knew also that, when they did, they were brought back to efficiency in the manner above stated. That he knew them to have failed on the morning of the accident would be a mere guess. He could not, of course, hear that they did not ring, and there is nothing to prove that he observed or was in a position to observe the elevator going up without previous signal. It would be just as permissible to suppose that he heard the bell ring on the one occasion in the morning of the day of the accident when, it was testified, it sounded, and that he was justified by having heard it in believing it to be in working order. In short, whatever peril there was to the deceased, employed where he was, from the failure of the bells to ring, it was not one ordinarily, reasonably or necessarily incident to his employment at that place, but exceptional, and of his knowledge of its existence at the critical moment there is no evidence. It follows that the question of his assumption of that risk was not in the case either as a matter of law to be declared by the court or as one of fact to be found by the jury.

The question of his contributory negligence was undoubtedly in the case,—not indeed as one to be negatived by plaintiff's evidence in the first instance: Baker v. Gas Co., 157 Pa. 593; Weitzel v. Traction Co., 184 Pa. 407, 412, nor as one to be affirmed by the court: See Joyce v. R. R. Co., 230 Pa. 1, but as one to be passed upon by the jury in the light of all the circumstances in

evidence bearing upon the prudence or imprudence of his actions and movements. It was so submitted to the jury and negatived by their verdict. Upon the familiar principle laid down in Phila. Trust Co. v. R. R. Co., 160 Pa. 590, 600, the court is without the means of testing the accuracy of their conclusion on a matter which the law refers to them exclusively.

*Error assigned* amongst others was in refusing judgment for defendant n. o. v.

*John B. Stevens,* with him *Garrett B. Stevens,* for appellants.—The servant assumes the risk of the known negligence of his employer, if he accepts or continues in the service after knowledge of such negligence: McCormick Harvesting Machine Co. v. Zakzewski, 4 L. R. A. (N. S.) 848 note (220 Ill. 522, 72 N. E. Repr. 147); Brossman v. R. R. Co., 113 Pa. 490; Lee v. Dobson, 217 Pa. 349; McCarthy v. Shoneman, 198 Pa. 568; Kupp v. Rummel, 199 Pa. 90; Wannamaker v. Burke, 111 Pa. 423; Pawling v. Hoskins, 132 Pa. 617.

*Henry P. Keiser,* for appellee, cited: Patterson v. Trust Co., 211 Pa. 173; Lillie v. Car & Foundry Co., 209 Pa. 161.

PER CURIAM, March 18, 1912:

The facts of the case and the law applicable thereto are clearly stated in the opinion of the learned president judge of the Common Pleas, on which we affirm the judgment.